IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JONATHAN E. HALL,

                Plaintiff,

v.                                   CIVIL  ACTION  NO.  3:06-0070

THE CITY OF HUNTINGTON,
a municipal corporation, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are motions for summary judgment on behalf of Defendants Mark Staley [Doc. #69], John Weber, and the City of Huntington [Doc. #67]. In their motions, Officers Mark Staley and John Weber assert that Plaintiff has not presented any evidence that shows either officer acted maliciously, recklessly, or with deliberate indifference to Plaintiff's health and safety. In addition, the City of Huntington argues that because Officers Staley and Weber did not negligently cause Plaintiff's injury, it is not liable under the doctrine of respondeat superior. For the reasons stated below, the Court **GRANTS** the respective motions for summary judgment.

## BACKGROUND

The underlying facts in this case are largely undisputed. On February 26, 2004, the City of Huntington Police Department dispatched Officers Mark Staley ("Staley") and John Weber ("Weber") to investigate a reported burglary at the Courtyard Apartments. On arrival, Officer Staley observed the plaintiff, Jonathan Hall ("Hall"), on the second floor. Hall immediately fled the apartment building on foot upon seeing the police. The officers proceeded to give chase, with

Officer Staley pursuing by foot and Officer Weber in his patrol car.  Officer Staley soon tackled Hall and both officers took him into custody.  Officer Staley and Weber searched Hall and his belongings, removing a knife and other items.  Officer Weber then transported Hall to the Huntington Police Department for booking while Officer Staley remained at the scene to complete their investigation.

At the police station, Officer Weber fingerprinted Hall and confiscated his jacket, shoes, and other loose clothing before placing him in a holding cell.  Shortly thereafter, Officer Weber returned to the cell and found Hall lying on the floor in a fetal position.  Hall informed Officer Weber that he had ingested a large quantity of pills, which he later identified as Xanax and Klonopin, and then appeared to lose consciousness.  Officer Weber immediately called Cabell County Emergency Medical Services.  Hall did not respond when the paramedics arrived[1] and needed smelling salts to revive him.  Hall reacted immediately to the smelling salts, which suggested that he was not unconscious or under the influence of drugs or alcohol.  Nevertheless, the paramedics transported Hall to Cabell Huntington Hospital to be treated for a potential drug overdose.

At the hospital, doctors pumped Hall's stomach and performed a toxicology screen.  Dr. Abrenica, the treating physician, found no evidence Hall had ingested any drugs as both the toxicology screen was negative[2] and the contents of his stomach did not contain any pill fragments. Dr. Abrenica did not believe Hall to be either suicidal or a danger to himself and, therefore, released him back into police custody.  At that time, Officer Weber became ill and remained at the hospital for treatment.

---

[1] The paramedics assert that Hall was physical able to respond, but refused to do so.

[2] Although the toxicology screen was negative for Xanax and Klonopin, it did reveal Hall had used cocaine recently.

Officer Staley transported Hall back to the Huntington Police Department, patted him down, and returned him to his holding cell. Officer Staley later permitted Hall to use a restroom located approximately thirty feet from the holding cell. After returning to his holding cell from the restroom, Hall set himself on fire using a Zippo lighter[3] located in his jacket pocket.[4] Police officers responded immediately to extinguish the fire, removing Hall's jacket and sweater to keep him from burning. Hall was again transported by paramedics to the hospital where he was treated for second and third degree burns suffered by the fire.

On February 1, 2006, Hall filed the instant Complaint against Huntington Police Officers Mark Floyd, Mark Staley, and John Weber, and the City of Huntington alleging that (1) Officers Floyd, Staley, and Weber deprived him of his right to be free from self-injury under 42 U.S.C. § 1983 because of their deliberate indifference to his safety; (2) Officers Floyd, Staley, and Weber acted recklessly, wantonly, and in reckless disregard of his safety, which directly and proximately resulted in his physical and mental injuries; and (3) the City of Huntington was liable for the negligence of Officers Floyd, Staley, and Weber under the doctrine of respondeat superior. Hall subsequently dismissed Officer Floyd from this suit when he discovered that Officer Floyd was not

---

[3]It is unclear from the record how Hall came into possession of the lighter. In his Complaint, Hall alleges the lighter was given to him by a police officer. Alternatively, he believes he obtained possession of the lighter while walking either to or from the restroom and his holding cell. In contrast, Hall testified in his deposition that the lighter was his own personal property, had been in his possession when arrested earlier, and could not recall whether it had ever been taken by either police officer prior to the incident. Likewise, none of the police officers could recall how Hall obtained the lighter. Regardless, the actual process of obtaining the lighter in question is immaterial to the Court's analysis.

[4]Hall's jacket had been taken earlier during his initial processing, but somehow it was returned at some point during his trip to or from the hospital.

present during the incident at issue. Hall later dismissed Officer Weber from Count I of the Complaint, the 42 U.S.C. § 1983 claim for deliberate indifference.

In March 2007, Officer Staley, Officer Weber, and the City of Huntington filed the pending motions for summary judgment. In their motions, Officers Staley and Weber argue that (1) Hall lacks sufficient evidence to establish that either officer acted recklessly, wantonly, or in reckless disregard to his safety to overcome the statutory immunity provided by W. VA. CODE § 29-12A-5(b)(2) and (2) Hall cannot prove that Officer Staley actually perceived that Hall would inflict serious harm to himself and that Hall deliberately acted indifferent to that risk. In addition, the City of Huntington argues that (1) Hall cannot show that Officers Staley and Weber acted negligently and, alternatively, that (2) the City of Huntington is immune for injuries resulting from the maintenance of a jail under W. VA. CODE § 29-12A-5(a)(14). In response, Hall argues that Officers Staley and Weber negligently failed to confiscate the lighter used to burn himself and disregarded his intent to harm himself, thereby causing his injuries. The motions are now ripe for decision.

## DISCUSSION

### I. Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter," *id.* at 249, but instead "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The nonmoving party must nonetheless offer concrete evidence containing specific facts "from which a reasonable juror could return a verdict in [its] favor." *Id.* at 256. To defeat a motion for summary judgment, the evidence presented in opposition must be probative, not "merely colorable," *id.* at 249–50, and cannot be merely "conclusory statements . . . without specific evidentiary support," *Causey v. Balog*, 162 F.3d 795, 801–02 (4th Cir. 1998). Moreover, where the nonmoving party bears the burden of proof on an essential element of its claim and fails to sufficiently establish that element after adequate time for discovery, summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## II. Officer Staley Did Not Act With Deliberate Indifference

Prison officials, including jailers of pretrial detainees, violate the civil rights of inmates when they display deliberate indifference to serious medical needs, including the threat of self-destruction or self-injury. *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992). Deliberate indifference involves a significantly higher standard than ordinary negligence, however, and requires the plaintiff to show the defendants subjectively knew of and disregarded a substantial risk of harm to the detainee. *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004). Thus, liability for deliberate indifference requires the plaintiff to show (1) the official in question subjectively recognized a substantial risk of harm and (2) the official in question subjectively recognized that his actions were inappropriate in light of that risk. *Id.* at 303. The subjective awareness element requires that the official not only *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient. *Id.*; *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997).

In this case, the plaintiff cannot satisfy either prong of the deliberate indifference inquiry. First, Officer Staley did not actually know that there was a substantial risk that Hall would attempt to injure or kill himself.  Officer Staley had stayed at the Courtyard Apartments to finish their investigation while much of the events occurred back at the police department.  There, Hall informed Officer Weber, not Officer Staley, that he had ingested a large quantity of drugs, though he did not state whether he had intentionally overdosed for the purpose of harming himself.[5]  Hall responded immediately to the smelling salts used by the paramedics to revive him, suggesting that Hall had faked the incident.  Nevertheless, paramedics transported Hall to the hospital for treatment for a possible drug overdose.  Shortly thereafter, Dr. Abrenica discharged Hall after finding no evidence of a drug overdose.[6]  Dr. Abrenica did not believe Hall to be suicidal, but did not tell the police this information because of patient privacy concerns.  Even so, a reasonable person could infer that a doctor would not release a patient who is suicidal so soon after being admitted.  In sum, there is simply no evidence that Officer Staley had actual knowledge that Hall intended to injure himself and, therefore, Officer Staley was not deliberately indifferent to Hall's risk of harm.

Second, even if Officer Staley was aware of the risk that Hall posed to himself, there is no evidence that Hall responded with deliberate indifference to that risk.  Officer Staley cannot be held

---

[5]Moreover, even if Hall informed Officer Weber that he was suicidal and wanted to die as claimed, Hall fails to show that Officer Staley was also told of his desire to kill himself.  The fact that Hall informed Officer Weber of his intentions does not impute this knowledge to all other police officers.  *See Gordon*, 971 F.2d at 1095 (finding that actual knowledge of one police officer of prisoner's suicide risk is not shared by fellow officers unless that information is actually passed along).

[6]Hospital personnel pumped Hall's stomach, but found no pill fragments as would be expected if someone had taken the eighty-five pills Hall purported to have ingested.  In addition, Hall tested positive only for cocaine in his toxicology screen, not Xanax and Klonopin as he had stated.

liable if he responded reasonably to a risk of which he had actual knowledge. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001). In this case, Officer Staley responded reasonably to risk of harm to Hall when he discovered Hall in a fetal position on the floor. At most, Officer Staley acted negligently in supervising Hall, but ordinary negligence does not rise to the level of deliberate indifference. Officers Weber and Staley immediately contacted paramedics after finding Hall on the floor of his cell. The paramedics treated Hall at the scene and then transported him to the hospital for further observation and treatment. After the hospital discharged Hall, Officer Staley searched him and returned him to his holding cell at the Huntington Police Department. It is unclear how Hall came into possession with the lighter, but whether Officer Staley failed to locate it during his search at the hospital or whether Hall took the lighter during one of his trips to the restroom, there is no evidence that Officer Staley deliberately disregarded the risk of medical harm to Hall and provided him the lighter. If anything, Officer Staley acted negligently in failing to find the lighter during his search or in not searching Hall after his trips to the restroom, but negligence does not satisfy the high bar for deliberate indifference. *See Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). As a result, this claim must be dismissed. *See Brown*, 240 F.3d at 390–91 (finding police officer's failure to take additional precautions negligent, but not deliberately indifferent, because "he simply did not *disregard* an excessive risk to [the prisoner's] health or safety" (quoting *Farmer*, 511 U.S. at 837)).

## III. Officers Staley and Weber Are Immune from Liability

Similarly, Hall fails to establish that Officers Staley and Weber maliciously, wantonly, or recklessly disregarded a known risk in order to overcome the statutory immunity for ordinary

negligence provided by the West Virginia Governmental Tort Claims and Insurance Reform Act, W. VA. CODE § 29-12A-5. An employee of a political subdivision is immune from liability pursuant to W. VA. CODE § 29-12A-5(b) unless (1) his acts or omissions were outside the scope of employment or official responsibilities or (2) his acts or omissions were "with malicious purpose, in bad faith, or in a wanton or reckless manner." W. VA. CODE § 29-12A-5(b)(1)–(2). In his Complaint, Hall specifically alleges that Officers Staley and Weber were at all times acting within the scope of their employment as police officers employed by the City of Huntington. Therefore, in order to prevail on a claim of ordinary negligence, Hall must show that Officers Staley and Weber acted either maliciously, in bad faith, or in a wanton or reckless manner.

To act in a wanton or reckless manner, the actor must have "intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Holsten v. Massey*, 200 W.Va. 775, 788 (1997). This disregard of a known or obvious risk is often "accompanied by a *conscious* indifference to the consequences, amounting almost to willingness that they shall follow." *Id.*

In this case, there is simply no evidence that either Officer Staley or Officer Weber intentionally acted in disregard of a risk to Hall's health or safety. Rather, the evidence shows that both officers repeatedly acted in response to perceived risks to Hall's health. After discovering Hall lying on the floor of his cell, the officers contacted paramedics to treat Hall and transport him to the hospital for further treatment and observation. Officer Staley did not bring Hall back to the jail until the hospital had treated and discharged him. Further, Officer Staley searched Hall before leaving the hospital. In sum, Hall has not supplied any evidence whatsoever that either Officer Staley or

-8-

Weber intentionally disregarded any risk to his health or well-being.  In particular, there is nothing indicating Officers Staley and Weber were consciously indifferent to the consequences and willingly allowed them to follow.  Instead, each officer sought medical attention following their discovery of the incidents and, in the case of the fire, removed Hall's clothes while still on fire in order to minimize the damage.  The fact that Officer Staley or Weber failed to confiscate the lighter or did not fill out a medical report does not rise to the level of wanton or reckless disregard and conscious indifference.  Accordingly, Hall's claim of negligence is dismissed because he cannot provide evidence sufficient to overcome the statutory immunity provided by W. VA. CODE § 29-12A-5(b)(2).

### IV. City of Huntington Not Liable Because Injury Not Foreseeable

Last, the Court turns to Hall's claim that the City of Huntington is liable for the negligence of Officers Staley and Weber under the doctrine of respondeat superior.  It is well-settled that there can be no liability on the part of the City of Huntington unless Officers Staley and Weber breached a legal duty owed to Hall that resulted in his injuries. *Atkinson v. Harman*, 151 W.Va. 1025, 1028 (1967).  Those injuries must have been reasonably foreseeable, however, and a person is not liable for damages if an ordinarily prudent person could not have anticipated or expected the injuries to occur. *State ex. rel. Cox. v. Sims*, 138 W.Va. 482, 496–97 (1953).  Here, the Court finds Hall's injuries unforeseeable in light of the circumstances as no prudent person could have anticipated Hall would attempt to burn himself.  As a result, the Court need not address the City of Huntington's statutory immunity defense.

Upon finding Hall lying in a fetal position, Officers Staley and Weber immediately contacted paramedics and had Hall transported to the hospital for treatment.  At the hospital, doctors pumped

the contents of Hall's stomach and found no evidence of a drug overdose.  Moreover, a urine test revealed Hall had used only cocaine that evening, not Xanax and Klonopin as he had claimed.  Hall did not return to police custody until the hospital had the opportunity to observe and treat him.  At that time, the doctors did not believe Hall to be a suicide risk or he would not have been released.  Therefore, in resuming custody of Hall, the defendants had no reason to believe Hall to be a risk to himself.

Further, Hall offers no evidence that he overtly informed either Officer Weber or Officer Staley that he intended to harm himself or wanted to die.  In his deposition, Hall stated that the only explicit statement he made to either officer was that he had overdosed on drugs, which later turned out to be inaccurate.  (Hall Dep. 71–72) As a result, Hall's later conduct could not have been foreseen by either police officer as they had no reason to believe that Hall had attempted to harm himself earlier or would attempt to do so in the future.  For that reason, neither Officer Staley or Officer Weber can be held liable for Hall's injuries under a theory of negligence, which in turn relieves their employer, the City of Huntington, of potential liability.  *State ex. rel. Cox.*, 138 W.Va. at 496–97.

## CONCLUSION

For the foregoing reasons, the Court finds Plaintiff's federal and state law claims against Officer Staley, Officer Weber, and the City of Huntington insufficient as a matter of law because there is insufficient evidence to support his claims.  Accordingly, the Court **GRANTS** the defendants' motions for summary judgment.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

-10-

ENTER:        July 19, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE